**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **MARCUS T. WILLIAMSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:04-0859** |
| | ) | |
| **MARTY C. ANDERSON, Warden,** | ) | |
| **Federal Correctional Institution,** | ) | |
| **Beckley, West Virginia,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Document No. 23.) and Plaintiff's Cross-Motion for Summary Judgment (Document No. 27.). Plaintiff and Defendants have submitted Memoranda in support of their positions. (Document Nos. 24 and 28 respectively.) Defendants have filed a Reply Memorandum in Support of their Motion to Dismiss or in the Alternative for Summary Judgment. (Document No. 30.)

## PROCEDURAL HISTORY AND BACKGROUND

On August 12, 2004, Plaintiff[1] filed an Application to Proceed *in forma pauperis* and a Motion for Civil Rights Violations [hereinafter referred to as Plaintiff's Complaint] naming as Defendants, in addition to Warden Anderson, case and unit managers and counselors at FCI Beckley in their official and individual capacities. (Document Nos. 1 and 2.)[2] Plaintiff alleges denial of his

---

[1] Plaintiff is currently an inmate at FCI Bennettsville, South Carolina, with a projected release date of November 14, 2009.

[2] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

constitutional right to due process and violation of his rights under the Eighth Amendment and to equal protection. Plaintiff also alleges that Defendant's acted in a racially discriminatory manner. Plaintiff's claims are therefore properly considered under <u>Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[3] Specifically, Plaintiff alleges that he was placed in segregation on December 31, 2003, based upon an incident report indicating that he had engaged in a scuffle with another inmate. On January 7, 2004, a Disciplinary Hearing Officer determined that Plaintiff did not violate prison regulations and authorized his release back into general population. Defendants, however, continued to hold Plaintiff in segregation until February 17, 2004, because, as Plaintiff alleges they told him, he was going to be transferred.[4] Plaintiff states in support of his claim that his due process rights were violated and that he was subject to cruel and unusual punishment asserting that

> 1.    The Plaintiff was never given a written statement of reasons and evidence relied on by the hearing committee, or an Administrative Detention Order for its decisions for extending the plaintiff's stay in Administrative Custody.
> 2.    The reasons for the plaintiff's extended confinement in Administrative

---

[3] This is one of three actions which Plaintiff has brought in which he claims violations of his constitutional rights. On September 17, 2004, he filed a Motion for Civil Rights Violation claiming violation of his constitutional rights and racial discrimination based upon Defendants' alleged refusal to move him to another cell because his cell mate was acting in an imposing manner and accept his grievances. That action was designated Civil Action No. 5:04-1011 and was assigned to Chief Judge Faber. Chief Judge Faber dismissed the action over Plaintiff's objections by Memorandum Opinion and Order filed on September 29, 2005. On November 5, 2004, Plaintiff filed a further Motion for Civil Rights Violation claiming that his constitutional rights were violated while he was in segregation from December 31, 2003, through February 17, 2004, when he was improperly strip searched four times. That action was designated Civil Action No. 5:04-1191, and was assigned to District Judge Goodwin. District Judge Goodwin dismissed the action by Judgment Order filed on August 31, 2005.

[4] It appears that Plaintiff was in administrative detention for a period of 42 days (January 7 through February 17, 2004) after charges that he engaged in a fight with another inmate were dropped.

Custody were not among those permitted under applicable regulations.

3.    Plaintiff Williamson did not receive a timely hearing during his extended time in Administrative Custody.

4.    He was not provided with the required written statement or Administrative Detention Order of evidence relying and reasons for his extended time in Administrative Custody.

5.    The Defendants have failed to demonstrate that the substantive reasons for Williamson's incarceration in Administrative Custody satisfied Bureau of Corrections Administrative Directive 801 or Program Statement 5270.07.

Plaintiff alleges that the conduct of the Defendant managers and counselors was "malicious and wanton" and exhibited their deliberate indifference to his constitutional rights. In support of his equal protection claim, Plaintiff indicates that the inmate who was found to have assaulted him was released from segregation and Plaintiff continued to be held there. Plaintiff states that he "is entitled to the same rights as any Caucasian or other race that is incarcerated." He states that as a consequence of being held in segregation, he became depressed, was prescribed increased dosages of drugs for his depression and had psychotherapy. He states that while he was held in segregation, he could not exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members as inmates in general population could. Plaintiff states that he was released from segregation on February 17, 2004. Plaintiff alleges that Defendants engaged in a conspiracy to violate his constitutional rights by keeping him in segregation without any reason refusing to accept and delaying in responding to his grievances. He further alleges that Warden Anderson used profanity in speaking with him about his complaints. Plaintiff seeks monetary (compensatory and punitive damages) and injunctive relief.

On January 11, 2005, the Court granted Plaintiff's Motion to Proceed *in forma pauperis*.(Document No. 7.)  In granting Plaintiff's Motion, the Court notified him that if he did not wish to pay the filing fee, he must write a letter to the Clerk within thirty days indicating that he did

3

not wish to prosecute the case. The Court stated that if he did so, the Court would dismiss the case without prejudice. This notification is included in every Order granting *in forma pauperis* status in this District. The Clerk issued summonses, and on January 25, 2005, Plaintiff filed a letter stating that he could not pay the filing fee in this case and did not want to prosecute it further and requesting that the case be dismissed without prejudice. (Document No. 18.)[5] Thus, Plaintiff complied with the Court's notification.

On March 11, 2005, Defendants filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment and Memorandum in Support addressing Plaintiff's claims on the merits. (Document Nos. 23 and 24.) Defendants state as follows respecting the facts underlying Plaintiff's claims:

> On December 31, 2003, Plaintiff was placed in Administrative Detention pending investigation of an incident report for fighting. On December 31, 2003, Plaintiff was issued an Administrative Detention Order informing him that he was being placed in Administrative Detention pending an investigation of a violation of Bureau regulations. Plaintiff was also issued an Incident Report for Fighting with Another Person in violation of Bureau of Prisons Code Section 21 on December 31, 2003. On January 7, 2004, Plaintiff's Incident Report for Fighting with Another Person was expunged by the Disciplinary Hearing Officer ("DHO") The DHO found Plaintiff had actually been assaulted by another inmate. Following the DHO's findings, Plaintiff remained in Administrative Detention until a determination was made that Plaintiff's presence in the general population no longer posed a threat to his safety, the safety of others, or the security and orderly running of the institution and until a bed became available in a unit separate from the inmate that had assaulted him. On February 17, 2004, Plaintiff was released from Administrative Detention.

(Document No. 24, pp. 2 - 3 (References to Declaration of Warden Marty C. Anderson omitted).)

Each Defendant has submitted a Declaration. Warden Anderson states as follows in his Declaration:

---

[5] Plaintiff filed the same letter making the same requests in the other actions which he had initiated though the Court had not granted his Applications to Proceed *in forma pauperis* in those cases.

9. Inmate Williamson's status was reviewed within three work days of his placement in administrative detention. His case was then reviewed on the record (in his absence) every seven days during his placement in the Special Housing Unit, with a formal hearing and review conducted at least every 30 days.

10. On January 7, 2004, inmate Williamson's Incident Report for Fighting With Another Person was expunged by the Discipline Hearing Officer ("DHO"). Specifically, the DHO found that inmate Williamson had been assaulted by another inmate. Because the incident report was expunged, inmate Williamson did not loose any privileges, did not forfeit any good conduct time, and was not plaiced in disciplinary segregation as a result of the disciplinary hearing.

11. Following the DHO's findings, inmate Williamson remained in Administrative Detention until an investigation was completed to determine whether his presence in the general population at FCI Beckley posed a threat to his safety, the safety of others, or the security and orderly running of the institution. Once it was determined that inmate Williamson could safely return to the general population at FCI Beckley, he remained in Administrative Detention until a bed became available in a unit separate from the inmate that had assaulted him.

12. Inmate Williamson was released from Administrative Detention on February 17, 2004.

Defendants Monty Christy, Curtis Lipps and James Hasbrouck, Counselors, state that "[d]uring the time that inmate Williamson was in Administrative Detention, he was not an inmate assigned to my case load." Defendant Melissa Leslie states that she was a Case Manager at FCI Beckley and "[i]nmate Williamson was an inmate assigned to my case load." She states as follows in her Declaration:

5. Inmate Williamson was placed in Administrative Detention after he received an incident report for fighting with another inmate. That incident report was later expunged by the Disciplinary Hearing Officer ("DHO") after the DHO found that inmate Williamson had actually been assaulted.

6. Inmate Williamson remained in Administrative Detention pending an investigation into whether it was safe for him to return to the general population at FCI Beckley and until a bed became available in a unit separate from the inmate that had assaulted him.

Defendant Andy Ronat states that he was the Unit Manager for the unit at FCI Beckley to which Plaintiff was assigned before his placement in administrative detention. Officer Ronat states exactly

as Case Manager Leslie did in her Declaration as set forth above.

Defendants assert in seeking dismissal of this case that Plaintiff does not indicate, nor will the facts support a finding, that Warden Anderson acted in any way directly to violate his constitutional rights but rather alleges that he conspired with other Defendants to keep Plaintiff in administrative detention. Defendants view Plaintiff's allegations against Warden Anderson as based upon the doctrine of *respondeat superior* which generally has no application in <u>Bivens</u> cases.  (<u>Id.</u>, pp. 5 - 7.) Defendants further assert that Plaintiff's assertions do not state a claim for which relief can be granted. They claim that the circumstances about which Plaintiff complains do not implicate any violation of his right to due process or equal protection or any liberty interest. (<u>Id.</u>, pp. 7 - 12.) Defendants further assert that they are entitled to qualified immunity and may not be held liable in their official capacities. (<u>Id.</u>, pp. 12 - 18.)

On March 14, 2005, the Court entered an Order advising Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that he had the right to respond to Defendants' Motion and submit Affidavits or statements in support of his claims. (Document No. 25.) On April 5, 2005, Plaintiff filed a Motion in Opposition to Dismiss or in the Alternative Motion for Summary Judgment whereby he makes a cross-Motion for Summary Judgment and also filed a Memorandum in Support. (Document Nos. 27 and 28.) Plaintiff contends that Warden Anderson knew that he was held in administrative detention after February 7, 2004, without a hearing and without being told why. He states that the Bureau of Prisons' Program Statement 5270.07 required that Defendants conduct a review within two days and hold a hearing no later than seven days from the time when an inmate is placed in administrative detention for his own protection. Plaintiff reiterates his claims of violations of his constitutional rights and requests that the District Court deny Defendant's

6

Motion, give him time for discovery, appoint an attorney to represent him and allow him to amend his Complaint.[6] (Id., pp. 8 - 9.) Referring to his own Declaration, Plaintiff states that his "allegations portray a completely clear violation of his constitutional rights by being held in Administrative Detention without legitimate reasons. There is a clear genuine issue of fact." (Id., p. 17.)

On April 19, 2005, Defendants filed a Reply Memorandum in Support of their Motion to Dismiss or in the Alternative Motion for Summary Judgment. (Document No. 30.) Defendants state that Plaintiff had no liberty interest in remaining in general population, but even if he did, he was provided an administrative detention order stating why he was placed in administrative detention and his status was reviewed periodically. Defendants attach the Declaration of James McCarty who was the Lieutenant assigned to the Special Housing Unit at FCI Beckley and served as the Special Housing Unit Review Officer [SRO] while Plaintiff was there. Officer McCarty states that "my responsibilities included conducting seven day informal reviews of inmates housed in the Special Housing Unit and thirty day in person hearings of inmates housed in the Special Housing Unit." Officer McCarty attaches a copy of a Special Housing Review Form pertaining to Plaintiff indicating that Plaintiff's status was considered every seven days after the incident report charging him with fighting with another inmate was expunged. Officer McCarty states that "[o]n February 4, 2004, I conducted a thirty day hearing with inmate Williamson present." Officer McCarty points out that the form indicates that a copy of it was given to Plaintiff after the thirty day hearing. Defendants further assert in their Reply that any failure on their part to follow applicable administrative regulations cannot be said to constitute a constitutional violation.

_____

[6] The Bureau of Prisons' Program Statement 5270.07 contains an outline of the Bureau's disciplinary hearing process as set forth at 28 C.F.R. §§ 541.14 - 541.21 and rules pertaining to Special Housing Units.

On August 10, 2005, the undersigned filed Proposed Findings and Recommendation that the District Court consider Plaintiff's January 25, 2005, letter (Document No. 18.) a request for dismissal of this case without prejudice in conformity with Rule 41(a)(1) and a request to withdraw his Application to Proceed *in forma pauperis* and grant Plaintiff's request unless Plaintiff or Defendants objected within the prescribed time period. If Plaintiff or Defendants objected, the undersigned recommended that the District Court deny Plaintiff's request and refer this case back to the undersigned for the purpose of entering of an Order requiring the institution presently having custody of Plaintiff to withhold amounts from his account in conformity with the formula set forth in the Order allowing Plaintiff *in forma pauperis* status (Document No. 7.) and send those amounts to the Clerk of this Court in payment of the Court's filing fee and for consideration of Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment and Plaintiff's Response in Opposition and Cross-Motion for Summary Judgment.

On August 31, 2005, Plaintiff filed Proposed Objections to Magistrate Judge's Findings and Recommendation. (Document No. 37.) In view of Plaintiff's objections, by Order filed on September 7, 2005, the District Court determined that Plaintiff wished to proceed with his claims, denied Plaintiff's letter Motion to dismiss and recommitted this matter to the undersigned for further consideration. (Document No. 38.)

Considering Plaintiff's Complaint of violations of his rights under the Fifth and Eighth Amendments of the United States Constitution under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[7], the undersigned finds

---

[7] A *Bivens* action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971);

that Plaintiff has not stated, and cannot state, a cognizable claim against Defendants under <u>Bivens</u>

and therefore respectfully recommends that this matter be dismissed.

## **DISCUSSION**

It is evident in the first place that Defendants' stated reason for holding Plaintiff in

administrative detention after the charges against him were expunged is valid, but Defendants did

not follow the procedures set forth in Bureau of Prisons' regulations in some respects in holding him

there. 28 C.F.R. § 541.22(a) provides pertinently as follows:

> The Warden may place an inmate in administrative detention when the inmate is in holdover status (i.e., en route to a designated institution) during transfer, or is a new commitment pending classification. The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:
>
> * * *
>
> (4) Is pending transfer;
> (5) Requests admission in administrative detention for the inmate's own protection, or staff determines that admission to or continuation in administrative detention is

---

*See also Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending *Bivens* to Eighth Amendment claims). A *Bivens* action is the federal counterpart of an action under 42 U.S.C.§ 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability.

A plaintiff asserting a claim under *Bivens* must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to *Bivens*. *See Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, *Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991); *Reingold v. Evers*, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

Clearly, Plaintiff's claims against Defendants in their official capacities are not cognizable under *Bivens* and must be dismissed.

necessary for the inmate's own protection;
(6) Is terminating confinement in disciplinary segregation and placement in general population is not prudent. The Segregation Review Official is to advise the inmate of this determination and the reasons for such action.

28 C.F.R. § 541.23 provides as follows respecting placing inmates in administrative detention for

their own protection and the procedure :

(a) Staff may consider the following categories as protection cases:
(1) Victims of inmate assaults[.]
                              * * *
(b) Inmates who are placed in administrative detention for protection, but not at their own request or beyond the time when they feel they need to be detained for their own protection, are entitled to a hearing, no later than seven days from the time of their admission (or from the time of their detention beyond their own consent). This hearing is conducted in accordance with the procedural requirements of § 541.17, as to advance written notice, staff representation, right to make statement and present documentary evidence, to request witnesses, to be present throughout the hearing, and advance advisement of inmate rights at the hearing, and as to making a record of the proceedings.
(c) Ordinarily, staff may place an inmate in administrative detention as provided in paragraph (a) of this rule relating to protection cases, for a period not to exceed 90 days. Staff shall clearly document in the record the reasons for any extension beyond this 90-day period.

28 C.F.R. § 541.22(b) provides pertinently as follows:

The Warden shall prepare an administrative detention order detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate . . .. Staff shall deliver this order to the inmate within 24 hours of the inmate's placement in administrative detention, unless this delivery is precluded by special circumstances. An order is not necessary for an inmate placed in administrative detention when this placement is a direct result of the inmate's holdover status.

28 C.F.R. § 541.22(c) provides as follows respecting the review of inmates' status in administrative

detention:

(1) Except as otherwise provided in Paragraphs (c)(2) and (c)(3) of this section, the Segregation Review Official will review the status of inmates housed in administrative detention. The SRO shall conduct a record review within three work days of the inmate's placement in administrative detention and shall hold a hearing and formally review the status of each inmate who spends seven continuous days in

10

administrative detention, and thereafter shall review these cases on the record (in the inmate's absence) each week, and shall hold a hearing and review these cases formally at least every 30 days. The inmate appears before the SRO at the hearing unless the inmate waives the right to appear. * * * Staff shall conduct a psychiatric and psychological assessment including a personal interview, when administrative detention continues beyond 30 days. The assessment, submitted to the SRO in a written report, shall address the inmate's adjustment to surroundings and the threat the inmate poses to self, staff and other inmates. Staff shall conduct a similar psychiatric or psychological assessment and report at subsequent one-month intervals should detention continue for this extended period. *Administrative detention is to be used only for short periods of time except where an inmate needs long-term protection (see § 541.23), or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns.* An inmate may be kept in administrative detention for longer term protection only if the need for such protection is documented by the SRO. Provided institutional security is not compromised, the inmate shall receive at each formal review a written copy of the SRO's decision and the basis for this finding. The SRO shall release an inmate from administrative detention when reasons for placement cease to exist.

* * *

(3) *When an inmate is placed in administrative detention for protection, but not at that inmate's request, the Warden or designee is to review the inmate's status within two work days of this placement to determine if continued protective custody is necessary. A formal hearing is to be held within seven days of the inmate's placement (see § 541.23, Protection Cases).*

(Emphasis added.) Plaintiff was initially charged with fighting with another inmate and placed in administrative detention. It appears that Defendants issued appropriate documents and brought the matter to hearing before a DHO in accordance with the regulations. On January 7, 2004, the DHO determined that Plaintiff was actually assaulted by the other inmate and the charges against Plaintiff were expunged. Because Plaintiff was the victim of an assault and Defendants believed harm might come to him if he returned to general population, Defendants were clearly entitled to hold him in administrative detention after January 7, 2004. The reasons for holding Plaintiff there had changed, and the undersigned finds, though it does not appear specifically to be required under the regulations, that it would have been prudent to issue a further administrative detention order stating the new reasons, *i.e.*, that Plaintiff had been assaulted and there was concern for his safety in general

11

population. It does not appear that Defendants did so. Reading 28 C.F.R. § 541.22(c)(3) and § 541.23(b) together, these regulations clearly required that Defendants were to review Plaintiff's status within two days of his placement in administrative detention and hold a formal hearing no later than seven days thereafter. It is not evident that they did so. It nevertheless appears from Officer McCarty's Declaration and the copy of the form attached thereto that Defendants complied with 28 C.F.R. § 541.22(c)(1) by reviewing Plaintiff's status every seven days and holding a hearing when he was in administrative detention for a period of thirty days.

Having determined that Defendants failed to comply in some, but not all, respects with the procedures set forth in the regulations, the undersigned next considers whether their failures amounted to violations of Plaintiff's constitutional rights and whether Defendants are entitled to qualified immunity.

### Plaintiff's Fifth Amendment Rights.

Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston, 946 F.2d at 343 (emphasis added). To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Coll. v. Roth, 408 U.S. 564, 570-71, 92 S.Ct.

12

2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a right protected in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709); Gaston, 946 F.2d at 343 (An inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement.") The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (Citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life []", the inmate's claims have no merit. Id.

Due process is implicated when an inmate is designated to segregation for a prolonged and indefinite period of time. In Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983), the United States Supreme Court found that under State statutes and regulations, inmate Helms had "a protected liberty interest in remaining in the general prison population." Id., 459 U.S. at 470 - 471, 103 S.Ct. at 871. The Supreme Court noted that some process is required when an inmate is placed in administrative segregation for a prolonged or indefinite term stating that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." The Court stated further as follows:

13

> Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision . . . will be based on facts relating to a particular prisoner – which will have been ascertained when determining to confine the inmate to administrative segregation – and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner. * * * [T]he ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations . . .

Id. The Supreme Court withdrew from the methodology prescribed by Hewitt focusing upon determining whether the State had created a protected liberty interest in Sandin v. Connor, supra.[8] The Supreme Court stated in Sandin that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 483 - 484, 115 S.Ct. at 2300. The Court stated further that a State "may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 484, 115 S.Ct. at 2300. The Court held that an inmate's confinement in disciplinary segregation for one month did not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life and thus did not establish a liberty interest sufficient to invoke a right to due process entitling the inmate to the procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 .Ed.2d 935 (1974). Sandin, 515 U.S. at 487, 115 S.Ct. at 2302. Thus, length of time that segregation is imposed remains a factor which Courts must consider in determining whether conditions are significant and atypical. The Second Circuit

---

[8] The Supreme Court clearly indicated in *Sandin* that it was not overruling *Hewitt*. *Sandin*, 515 U.S. at 483 n. 5, 115 S.Ct. at 2300 n. 5.

considered whether 28 C.F.R. § 541.22 creates a liberty interest in view of <u>Sandin</u> in <u>Tellier v. Fields</u>, 280 F.3d 69, 79 - 83 (2d Cir. 2000). Mr. Tellier complained that he had been held in the Special Housing Unit of a federal facility for 514 days without initially being told why or having a hearing. The Court first addressed whether Mr. Tellier's confinement in the Special Housing Unit created an atypical or significant hardship and stated that "Tellier has alleged a confinement of 514 days under conditions that differ markedly from those in the general population, and we cannot conclude as a matter of law that this confinement was not 'atypical and significant.'" <u>Tellier</u>, 280 F.3d at 80. The Court then considered whether 28 C.F.R. § 541.22 created a liberty interest and determined that it did. <u>Tellier</u>, 280 F.3d at 81. The Court noted that other Courts have found to the contrary citing, among other cases, <u>Awalt v. Whalen</u>, 809 F.Supp. 414, 416 (E.D.Va. 1992). Considering Mr. Awalt's complaint that he was held in administrative detention for a period of ninety-one days and should have received seven and thirty day reviews during that period, the District Court stated that "there is no firmly established right to be confined in the general prison population" and concluded that Sections 541.22 and 541.23 "do not create a liberty interest in release from detention which a hearing would protect." <u>Awalt</u>, 809 F.Supp. at 416. The Court reasoned as follows:

> Even though a prisoner involuntarily held in administrative detention may be entitled under 28 C.F.R. § 541.23 to a hearing on the subject of his continued detention, whether or not the inmate stays in administrative detention remains discretionary with the institutional staff. That determination depends not on anything within the prisoner's control, but on the perceived danger to his well-being if he was housed in the general population, as well as the potential threat to security and good order if he was released.

<u>Id.</u> Considering and rejecting defendants' claim of qualified immunity, the <u>Tellier</u> Court stated that "[h]ad defendants confined Tellier for a brief period without a required hearing, we might be

inclined to agree that no objectively reasonable officer could have known that such a minor infraction constituted a violation of Tellier's constitutional rights." Tellier, 280 F.3d at 85. The Court noted then that the cases upon which the defendants relied, including Awalt where qualified immunity was found, involved relatively brief periods of confinement. Id. The Court in Awalt concluded that "it is clear that defendants are entitled to qualified immunity because there is no firmly established right that the plaintiff alleged was violated." Awalt, 809 F.Supp. at 416.

The length of time Plaintiff was in administrative detention (42 days) was not much more than that complained of by Mr. Connor in Sandin (30 days). It was less than that complained of by Mr. Awalt (91 days) and very much less than that complained of by Mr. Tellier (514 days). It certainly cannot be regarded as an extended length of time. Additionally, it is clear that Defendants complied to some extent, though not fully, with the applicable regulations by reviewing Plaintiff's status while he was in administrative detention every seven days and after thirty days. Applying the principles set forth in Sandin, the undersigned finds that Plaintiff's placement in administrative detention between January 7 and February 17, 2004, was not a condition which exceeded his sentence in an unexpected manner or created an atypical or significant hardship in relation to the ordinary incidents of prison life. Under the circumstances, no liberty interest can be said to have existed by virtue of the regulations, and no violation of due process can therefore be said to have occurred. The undersigned concludes that Plaintiff's claim that Defendants violated his right to due process in failing to comply entirely with the applicable regulations and conspired to do so has no merit.

**Plaintiff's Eighth Amendment Claim.**

16

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104,97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment include's an inmate's right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health and safety . . . ." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); *see also* <u>Hathaway v. Coughlin</u>, 37 F.3d 63,66 (2d Cir. 1994). The Eighth Amendment comprises both an objective and subjective component. *See* <u>Wilson</u>, <u>supra</u>, 501 U.S. at 298, 111 S.Ct. at 2324. The inmate must allege and establish that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) officials displayed "deliberate indifference" to his health or safety. *See* <u>Farmer</u>, <u>supra</u>, 511 U.S. at 834, 114 S.Ct. at 1977. In <u>Sweet v. South Carolina Dept. of Corrections</u>, 529 F.2d 854 (4th Cir. 1975), the Fourth Circuit considered the appeal of an inmate who had been confined for five years in segregation for his own safety and requested, among other things, more opportunities to work and exercise and "other inmates to converse with." <u>Id.</u>, at 858 - 859. The Court summarized the law as it stood at the time as follows:

> '[I]solation from companionship,' 'restriction on intellectual stimulation and prolonged inactivity', inescapable accompaniments of segregated confinement, will not render segregated confinement unconstitutional absent other illegitimate deprivations. Nor will the fact that the segregated confinement is prolonged and indefinite be sufficient in itself to command constitutional protection, though it is a factor to be considered, especially if the confinement is punitive rather than administrative or protective. Whether prolonged or indefinite duration may offend constitutional standards will depend on whether the above standards of confinement are observed, and whether the confinement 'bear(s) some reasonable relation to the purpose for which the individual is committed.'

<u>Id.</u>, at 861, footnotes omitted. The Court of Appeals affirmed the District Court's decision and

remanded the case on the issue whether the inmate's claims that he was denied adequate exercise and adequate opportunity to shower were cognizable under the Eighth Amendment. Id., at 865 - 866. Citing Hutto v. Finney, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571 - 72, 57 L.Ed.2d 522 (1978) and Sweet, *supra*, the Fourth Circuit stated in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), that "length of time is 'simply one consideration among many' in the Eighth Amendment inquiry." The conditions of the confinement are also an important consideration. Hutto, 437 U.S. at 685 - 87, 98 S.Ct. at 2571.

Plaintiff complains that while he was held in segregation, he became depressed, was prescribed increased dosages of drugs for his depression and had psychotherapy. He states that he could not exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members as inmates in general population could. In view of the Forth Circuit's decisions in Sweet and In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, it is clear that the circumstances about which Plaintiff complains were not beyond those commonly experienced when inmates are held in administrative detention and do not implicate violation of his rights under the Eight Amendment. The undersigned notes that Plaintiff indicates and it appears from the form attached to Officer McCarty's Declaration that mental problems which Plaintiff experienced as a result of his placement in administrative detention were treated. The undersigned therefore concludes that Plaintiff's Eight Amendment claim has no merit.

**Plaintiff's Claim of Equal Protection / Discrimination.**

Viable equal protection claims are based upon allegations that similarly situated individuals are treated differently without a rational relationship to a legitimate governmental purpose. In order

to state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff.  <u>Johnson v. California</u>, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005). Plaintiff's allegation that Defendants discriminated against him on the basis of race by treating him less favorably than they treated his assailant does not present a cognizable equal protection claim. The evidence as it appears in the record does not indicate that Defendants made it a practice to prefer a certain class of inmates over others. Assuming that Plaintiff's allegations are true, it is not evident that Defendants held Plaintiff in administrative detention improperly because of his race. Rather, they had legitimate reasons for doing so. Thus, the undersigned concludes that Plaintiff's claim that Defendants violated his right to equal protection is insufficient and does not state a claim for which relief can be granted. The alleged circumstances therefore, do not present sufficient grounds for relief under <u>Bivens</u>.

## **Defendants' Claim of Qualified Immunity.**

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there was no protection against suits accusing them of misconduct in the performance of their public duties,. Federal officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); <u>Taylor v. Waters</u>, 81 F.3d 429, 433 (4th Cir. 1996). In <u>Harlow</u>, the Court stated that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may

19

determine

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

Harlow, 457 U.S. at 818. In a case in which the defense of qualified immunity is raised, the Court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting its inquiry of whether the defendant's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.  Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L.Ed.2d 773 (1996).  The District Court must determine first whether "particular conduct occurred," and second, "whether uncontroverted conduct represented the [violation of a constitutional right]."  Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996), reh'g en banc denied, 105 F.3d 174 (1997).  Only if the Court determines that the plaintiff alleges the violation of a clearly established constitutional right does the Court then proceed to determine whether a reasonable person in the defendants' position should have known that their conduct was illegal.  Id.; Pittman v. Nelms, 87 F.3d 116, 199 (4th Cir. 1996); DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995).

> The responsibility imposed on public officials to comply with constitutional requirements is commensurate with the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.  It is not measured by the collective hindsight of skilled lawyers and learned judges. * * * "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993).

Jackson v. Long, 102 F.3d 722, 730-31 (4th Cir. 1996). Finding therefore consistently with Harlow that issues of qualified immunity should be resolved at the earliest possible stage of the litigation, the Fourth Circuit has adopted a "heightened pleading standard." Dunbar Corp. v. Lindsey, 905 F.2d

754, 763 (4th Cir. 1990); see also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d

411 (1985)(noting that qualified immunity is "an *immunity from suit* rather than a mere defense to

liability" and "such pretrial matters as discovery are to be avoided if possible[.]" (Emphasis in

opinion.)). The "heightened pleading standard" requires specification of the clearly established

rights involved and relates to the degree of factual specificity required in the Complaint. Dunbar

Corp., 905 F.2d at 763.

Plaintiff has not alleged the violation of a clearly established constitutional right. The

undersigned concludes therefore that Defendants are entitled to qualified immunity.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is hereby respectfully **PROPOSED** that the District Court

confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT**

Defendants' Motion to Dismiss (Document No. 23.), **DENY** Plaintiff's Cross-Motion for Summary

Judgment (Document No. 27.), **DISMISS** this matter and **REMOVE** this matter from the Court's

docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby

**FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C.

Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days from the

date of filing of this Findings and Recommendation within which to file with the Clerk of this Court

specific written objections identifying the portions of the Findings and Recommendation to which

objection is made and the basis of such objection. Extension of this time period may be granted for

good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schonce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Chambers and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff

Date: February 3, 2006.

R. Clarke VanDervort
United States Magistrate Judge